UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TAMI K.,

      Plaintiff,

 v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

CASE NO. C19-5324 BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

  Plaintiff appeals the denial of her application for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erred by improperly discounting medical testimony, her testimony, and lay testimony, and by basing the step-five evaluation on an incomplete residual functional capacity ("RFC") assessment. Dkt.13. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

  Plaintiff states primarily a physical disability along with mental-health limitations, alleging an onset date of February 13, 2015. Tr. 17, 48. Her applications were denied and the ALJ held a November 2017 hearing. Tr. 42–84. In a March 2018 decision, the ALJ determined that plaintiff had the severe impairments of severe musculoskeletal impairment of the spine with back pain and sciatica, status post-lumbar spinal fusion; depressive and anxiety-related disorders;

and obesity. Tr. 20. The ALJ assessed that plaintiff has the RFC to perform sedentary work with additional limitations: she can work six hours out of eight in a sedentary posture; she can work on the feet or standing, or in combination, for no more than two hours; she requires a sit/stand alternating option, not to be frequently utilized, meaning that she can be expected to work on her feet, if needed, for 30 minutes or more, and can work seated for at least two hours or more; she is limited to no fast-paced production demands or other unusual work stressors, such as frequent travel to unfamiliar places or accepting mandatory overtime. Tr. 23. Although the ALJ determined plaintiff could not perform any of her past relevant work, he found at step five there are jobs that exist in significant numbers in the national economy plaintiff can perform. Tr. 34–35. The ALJ therefore found plaintiff was not disabled. Tr. 35.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff contends the ALJ erred by: (**1**) misevaluating the 2017 opinion of treating physician Richard Faiola, M.D.;[1] (**2**) misevaluating the opinion of non-examining, reviewing physician Brent Packer, M.D.; (**3**) discounting plaintiff's testimony; (**4**) rejecting lay testimony

---

[1] Although plaintiff referred to challenging the ALJ's handling of Dr. Faiola's "opinions," Dkt. 13, at 1, her brief offers discussion only about the rejection of Dr. Faiola's October 12, 2017 "Treating Opinion that Plaintiff's Chronic Sacrum and Low Back Pain and Reduced Stamina Due to Pain Limited Her to Working 4 Hours Most Days with Frequent Rest Breaks and Postural Changes," Dkt. 13, at 4. *See* Dkt. 13, at 4–8.

by plaintiff's husband; and (**5**) basing the step-five evaluation on a faulty RFC. Dkt. 13. Plaintiff has failed to demonstrate the ALJ's interpretation of the medical or testimonial evidence is unreasonable, unsupported by substantial evidence, or based on harmful legal error.

### 1. Opinion of Treating Physician Dr. Faiola

Where, as here, there is a conflict in medical opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the opinion of treating physician Dr. Faiola.[2] *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Although plaintiff argues otherwise, the Court finds the ALJ cited specific and legitimate reasons for discounting Dr. Faiola's opinion.

In October 2017, Dr. Faiola provided a medical opinion. In full, Dr. Faiola stated:

> This patient has a single point cane that she finds useful when out of the house, walking more than a few blocks.
>
> Her chronic pains have been well documented in her record. Primarily sacrum, low back, R foot. Most of her symptom[s] at all sites are from osteoarthritis generated, that will wax and wane.
>
> Recliner seating is better for her than regular seated posture.
>
> She does do her housework with considerable effort and discomfort, sometimes requiring assistance to complete.
>
> Her symptoms significantly limit her work options – mostly to positions where she could change posture frequently with rest breaks etc. Stamina limited to about 4 hours, most days.

Tr. 586. The ALJ gave little weight to Dr. Faiola's opinion because (1) it appeared to be based more on plaintiff's subjective complaints than on objective findings, e.g., plaintiff's use of a cane appeared to be personal preference rather than medical prescription, Tr. 32 (citing Tr. 546–86);

---

[2] In contrast to Dr. Faiola, non-examining, reviewing physician Robert Bernardez-Fu, M.D., opined that plaintiff could perform a range of sedentary work, including past work. Tr. 120–26.

and (2) it was internally inconsistent with objective medical findings and diagnostic testing, observed by Dr. Faiola and neurologists, that indicated generally normal to variable sensation in the lower extremities and normal gait and balance, Tr. 32 (citing Tr. 498–502, 512–14, 538–45, 551, 567, 579, 581–83, 587–89); *see also* Tr. 25–28 (citing Tr. 434–35, 442, 449, 453, 456, 458–59, 461–62, 539–40, 543–44, 549, 562, 565, 568, 574). These reasons were specific, legitimate, and supported by substantial evidence.

First, an ALJ may discount a treating provider's opinions that are based largely on self-reports rather than on clinical evidence when, as here, the ALJ also properly discounts a claimant's testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). At the same appointment in which Dr. Faiola was provided with disability forms to fill out, he noted references to a post-operative MRI showed "no significant pathology" and observed that plaintiff's gait, station, balance, and movement of extremities were normal. *See* Tr. 28, 567–68. Similarly, although plaintiff testified a cane was medically prescribed, there is no record of such a prescription, Dr. Faiola's October 2017 opinion refers to the cane merely as "useful," Tr. 586, and Dr. Faiola's clinical notes observe repeatedly plaintiff is "walking freely though with a SPC [single-point cane]," *see, e.g.*, Tr. 568, 571.

Second, the ALJ reasonably discounted Dr. Faiola's October 2017 opinion about the severity of plaintiff's limitations because an MRI of plaintiff's tailbone and nerve conduction studies were negative and neurological examinations revealed largely normal findings, such as normal gait, sensation, and motor strength. *See* 20 C.F.R. §§ 404.1527 (c)(4), 416.927(c)(4), Tr. 32 (citing 498, 514). Moreover, the ALJ indicated neither Dr. Faiola's October 2017 opinion, nor Dr. Faiola's other opinions, were rejected outright. Tr. 31–32. The ALJ included a sit/stand option consistent with plaintiff's testimony and Dr. Faiola's opinions. Tr. 32. In addition, the

ALJ's rationale for giving only some weight to Dr. Faiola's January 2016 opinion that plaintiff was limited to working only five-hour shifts applies with similar force to Dr. Faiola's October 2017 opinion she was limited to fours of work: after plaintiff's alleged onset date, she worked around 38 hours per week and continued to collect unemployment thereafter, indicating she was still looking for employment; and the objective findings on diagnostic imaging and presentation during neurological consultations were largely benign. Tr. 31 (citing Tr. 254, 441, 498–502, 512–14, 538–45, 579, 581–82, 587–89).

Plaintiff argues the ALJ should not have discounted Dr. Faiola's opinion as being too heavily based on plaintiff's discounted testimony because Dr. Faiola also based his opinion on objective observations such as leaning diagonally while sitting and his prescription of heavy opioid medications to manage her pain. Dkt. 13, at 6–7. Plaintiff also argues the ALJ should have concluded the medical record was consistent with Dr. Faiola limiting plaintiff to four hours of work daily, and that the ALJ should have indicated in the RFC that plaintiff needed to use a cane. *Id.* Dr. Faiola did not, however, indicate in his October 2017 opinion or elsewhere the basis for plaintiff's stamina restriction and it was reasonable for the ALJ to infer Dr. Faiola relied primarily on plaintiff's discounted self-reports. The ALJ did not determine Dr. Faiola had *no* objective basis for his opinions, i.e., the ALJ did not suggest plaintiff showed no cognizable symptoms of pain or postural limitations. Rather, the ALJ discounted both plaintiff's testimony and Dr. Faiola's assessment about the severity of plaintiff's restrictions. There is no evidence Dr. Faiola either prescribed a cane or opined plaintiff could not be mobile without use of a cane and no such inference can be reasonably made unless plaintiff's testimony is accepted in its entirety. Although plaintiff's alternative interpretation of the evidence is plausible, she does not demonstrate the ALJ's specific and legitimate reasons for discounting Dr. Faiola's October 2017

opinion—overreliance on plaintiff's discounted subjective complaints and inconsistency with the objective medical record—were unreasonable or unsupported by substantial evidence. *See Arkansas v. Oklahoma*, 503 U.S 91, 113 (1992).

The Court accordingly concludes the ALJ did not harmfully err as a matter of fact or law by discounting the opinion of treating physician Dr. Faiola.

**2.  Opinion of Non-examining, Reviewing Physician Dr. Packer**

The ALJ may discount the opinion on a non-examining, reviewing physician such as Dr. Packer by referring to specific evidence from the record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). The Court finds the ALJ referred to specific evidence from the record for discounting Dr. Packer's opinion.

In April 2015, non-examining physician Dr. Packer reviewed and agreed with the disabling limitations assessed by non-examining physician Nicholas Swiatkowski, M.D. Tr. 506–11 (Dr. Packer); *see* Tr. 377–83 (Dr. Swiatkowski). The ALJ gave little weight to Dr. Packer's assessment because it was based on Dr. Swiatkowski's discounted opinion (the rejection of which is not challenged here), was inconsistent with the longitudinal medical evidence that showed limited objective findings on diagnostic studies, and was inconsistent with plaintiff's attempt to work for several months and the ability to complete household chores throughout the day. Tr. 31. That plaintiff does not challenge the ALJ's rejection of Dr. Swiatkowski's opinion is sufficient reason to affirm the ALJ's discounting of Dr. Packer's non-examining opinion based in-part on Dr. Swiatkowski's conclusions. Dr. Swiatkowski's opinion, provided on a checkbox form, is not only conclusory, it is self-contradictory. Although Dr. Swiatkowski concluded plaintiff was unable to perform sedentary work, he described her subjective symptoms and

treatment history by stating "see note 4/16/15" (i.e., the same date as his review of the records),[3] described her range of motion as "all appear normal," and for his treatment recommendation stated "can[]not treat what has not yet been diagnosed." Tr. 377–79. Nonetheless, the ALJ also referred to other specific evidence that undermined Dr. Packer's opinion: contradiction by longitudinal medical evidence regarding objective findings and by daily activities such as working for a period at 38 hours per week. Tr. 31 (citing Tr. 42–84, 399–401, 459, 462, 512–14, 587–89); *see, e.g.*, Tr. 49, 52–53, 61, 254, 441.

The ALJ accordingly did not harmfully err as a matter of fact or law by discounting the opinion of non-examining, reviewing physician Dr. Packer.

### 3. Plaintiff's Testimony

An ALJ may reject a claimant's subjective complaints by offering specific, clear and convincing reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). The Court finds the ALJ cited specific, clear and convincing reasons for discounting plaintiff's testimony about the severity of her symptoms.

The ALJ accounted for plaintiff's physical complaints of low-back pain, tailbone pain, and numbness in her feet by limiting plaintiff a restricted range of sedentary work with an alternating sit/stand option.[4] Tr. 23. The ALJ discounted the severity of plaintiff's symptom testimony because her allegations were inconsistent with (1) the objective evidence;

---

[3] Although Dr. Packer does not indicate to which notes he was referring, the record contains the April 16, 2015 treatment notes of Dr. Faiola. Tr. 458–60. In those notes, Dr. Faiola observed: "[S]omewhat an[tal]gic gait and station. Extremities are unremarkable. She denies any lost ROM and we thus did not test specific measurements w[h]ich do grossly appear fully normal."; and Much improved in posture, she is standing straight and tall, walking freely though with a SPC." Tr. 459.

[4] Plaintiff does not challenge the ALJ's RFC assessment of mental restrictions that limited her to no fast-paced production demands or unusual stressors. Tr. 23. Such a challenge has therefore been waived. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003).

(2) plaintiff's other statements; (3) her daily activities; (4) her searching for and attempting to work; and (5) her receipt of unemployment benefits after the alleged onset date of disability. Tr. 24–28, 30. These reasons are clear and convincing.

First, although pain testimony cannot be rejected on the sole ground it is not fully corroborated by objective medical evidence, it was reasonable for the ALJ to have considered the medical evidence as a relevant factor in determining the severity of the pain and its disabling effects. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Plaintiff alleged she was unable to stand or sit more than fifteen minutes at a time or walk more than three-hundred yards due to back and tailbone pain. Tr. 65–66. In contrast to these allegations, imaging of plaintiff's back and tailbone revealed no significant pathology. Tr. 400–01, 455, 514, 563, 567, 581–82, 584, 587–89. In addition, throughout the record plaintiff displayed normal gait, station, balance, and movement of extremities, despite tenderness to palpitation. Tr. 434–35, 442, 449, 453, 456, 458–59, 461–62, 498–99, 539–40, 543–44, 549, 562, 565, 568, 574. Although plaintiff contends the ALJ should have given more weight to her allegations of pain because she was prescribed opioid pain relievers, there is no dispute plaintiff suffered from pain. The salient question is whether the pain was so severe as to be disabling even with medication. In April 2015, Dr. Faiola stated plaintiff had been "coping at work by narcotic analgesia" before she was terminated for non-medical reasons. Tr. 458. Non-examining agency physician Dr. Bernardez-Fu noted plaintiff "appears to have a narcotic dependence and is not fully honest about her opiate use." Tr. 120. This conclusion is plausibly reflected in a nurse's question in clinical notes about whether the visit was "a manipulation looking for more pain meds?", Tr. 437; in Dr. Faiola's March 2016 observation that "[t]here is a bit of defiance as we challenge her on picking up the diclofenac and lidocaine she had ordered 2 weeks ago, while complaining she had no pain meds, having run

out," Tr. 434; and in Dr. Faiola's March 2017 concern plaintiff was duplicating requests for some of her medications months before needed, Tr. 567.

Second, the ALJ cited to inconsistencies in plaintiff's statements and conduct that undermined her allegations. Tr. 30; *see Molina*, 674 F.3d at 1112. For example, although plaintiff stated she used a cane whenever she could not lean on something, Tr. 59, 65, 310, in an August 2015 examination her gait was normal, she walked unaided, and she could stand on her heels and toes. Tr. 514. Similarly, although in 2016 plaintiff informed the agency that she did not feed her dog, Tr. 305, in 2017 she told her doctor she injured her finger while cutting meat for her dog, Tr. 567.

Third, the ALJ reasonably concluded her daily activities suggested sedentary work with restrictions rather than inability to perform work. Tr. 30. Although plaintiff referred to an inability to lift more than five to ten pounds, Tr. 309, she stated she must on occasion lift her 80-pound, struggling dog to place him into a kennel, Tr. 266. Plaintiff's daily activities included shopping for groceries, preparing meals for herself and her husband, cleaning, doing the laundry, and driving. Tr. 62, 267–68, 369. Although plaintiff contends she can complete her daily activities only when they are performed in her own way and with frequent recliner breaks, it was not an unreasonable inference for the ALJ to have determined that such activities discredited the severity of plaintiff's allegations because they contradicted her claims of a totally debilitating impairment. Tr. 30; *Molina*, 784 F.3d at 1112. The ALJ accommodated plaintiff's assessed physical restrictions by limiting the amount of time she could work in a sedentary posture, by limiting her to two hours on her feet, and by requiring a sit/stand option.

Fourth, the ALJ cited plaintiff's searching for and attempting to work as a reason for discounting the severity of her allegations of disability. Tr. 25–26, 30. For example, although

plaintiff alleged disability as of February 2015, in April 2015 she told a DSHS psychiatric examiner that she had been applying for work but could not be hired because her former employer tells prospective employers that she cannot be trusted, and that she went to Work Source daily and to Bridge to Work weekly. Tr. 368–69. Similarly, plaintiff testified to working for up to 39 hours on a seasonal job. Tr. 52. Although such attempts to work were not sufficient to constitute substantial gainful activity, they could be reasonably construed as suggesting an ability to do more work than she actually did. 20 C.F.R. §§ 404.1571, 416.971; *see, e.g.*, *Bray v. Commissioner of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Fifth, the ALJ discounted the severity of plaintiff's symptom testimony because plaintiff received unemployment from the first quarter of 2015 through the third quarter of 2016. Tr. 30. A claimant's receipt of unemployment benefits can be a valid basis to reject allegations of disability if it shows that an applicant held herself out as available for full-time work. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988); *see also Ghanim*, 763 F.3d at 1165. Because in Washington a person can generally receive unemployment benefits only if she holds herself out as available for full-time work, the ALJ could reasonably infer that plaintiff's receipt of unemployment benefits indicated that she had held herself out to be more capable of working than her symptom testimony suggested. *See* R.C.W. § 50.20.010; W.A.C. § 192-170-010.

The ALJ did not harmfully err as a matter of fact or law by discounting plaintiff's testimony about the severity of her physical limitations.

### 4. Lay Testimony by Plaintiff's Husband

An ALJ must offer germane and specific reasons for discounting lay testimony such as the testimony of plaintiff's husband. *See Bruce v. Astrue*, 557 F.3d 1113, 1115–16 (9th Cir. 2009). The Commissioner concedes that the ALJ did not offer valid reasons to reject the lay

testimony by plaintiff's husband, Tr. 33, but argues that this error was harmless. The Court agrees.

An ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting a claimant's claims also discredits the lay witness's claims. *Molina*, 674 F.3d at 1122. Thus, plaintiff's protestations that the testimony by plaintiff and by plaintiff's husband are not *identical* is immaterial: the substantial evidence that discredits plaintiff's testimony applies with equal force to discredit the lay testimony by plaintiff's husband. In fact, it may be reasonably inferred that the discrepancies between plaintiff's testimony and the testimony by her husband suggest fewer limitations. For example, while plaintiff reported not feeding the dog, Tr. 305 (March 2016), her husband stated that "she take[]s care of the dog and if she leave[]s she puts him in the kennel," Tr. 317 (March 2016). *See also* Tr. 567 (March 2017 medical notes in which plaintiff reported cutting finger while cutting meat for dog). Similarly, while plaintiff stated that she was no longer able to sit for eight hours or stand for more than 15-20 minutes, Tr. 265, her husband stated that "she can't sit or stand for a full 8 hours *with[]out taking her pain medication*," Tr. 316 (emphasis added). Moreover, it could be reasonably inferred that his elaborations on plaintiff's daily activities suggest greater functionality than alleged. For example, while plaintiff testified that her daily chores included preparing lunch for her husband and doing the dishes, Tr. 62–63, and reported that her "vacuum is too heavy" to complete housework, Tr. 307, her husband stated that plaintiff's chores included making breakfast, lunch, and dinner for herself every day, *vacuuming*, doing the laundry, washing dishes, caring for the dog, getting the mail, keeping the house tidy, driving, and grocery shopping. Tr. 317–19.

The ALJ erred by failing to cite germane and specific reasons for rejecting the lay testimony by plaintiff's husband, but this error was harmless.

**5. Step Five Evaluation**

Because plaintiff has failed to demonstrate that the ALJ harmfully erred with respect to the medical evidence and the testimony, she has failed to demonstrate that the ALJ harmfully erred at step five of the sequential evaluation by relying on an incomplete RFC assessment.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 27th day of November, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge